IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

MURTAZA ALI,                                    )
                                                )
                  Plaintiff,                    )
                                                )
vs.                                             )      Case No. 07-CV-059-TCK-SAJ
                                                )
WALTER DINWIDDIE, Warden, DCCC;                 )
STEVEN BECK, Warden, MACC;                      )
ANITA TRAMMELL, Deputy Warden, MACC;            )
LEWIS MCGEE, Chief of Security, MACC;           )
RONNIE BOWEN, Captain, MACC;                    )
MATTHEW HAMPTON, Officer, MACC;                 )
C. T. HURD, Unit Manager, MACC;                 )
RUSSELL GOLDEN, Hr'g Officer, MACC;             )
PHILLIP WILSON, Hr'g Officer, MACC;             )
THOMAS SHARP, Warden's Ass't, MACC;             )
AL BLAIR, Warden's Ass't, MACC;                 )
DEBBIE L. MORTON, Director's Designee;          )
OKLAHOMA DEPARTMENT OF                          )
CORRECTIONS; JOHN DOE, Unknown                  )
Chief of Security, DCCC,                        )
                                                )
                  Defendants.                   )

## OPINION AND ORDER

This is a 42 U.S.C. § 1983 civil rights action commenced by Plaintiff, a state prisoner

appearing *pro se*, on January 24, 2007. Plaintiff alleges several constitutional violations arising out

of his treatment during, and after, an incident which occurred on November 24, 2005, while

incarcerated at Mack Alford Correctional Center ("MACC"). He also claims additional

constitutional violations upon transfer to Dick Conner Correctional Center ("DCCC"). Plaintiff

seeks compensatory damages, punitive damages, a declaratory judgment, costs and "any other relief

this Court deems equitable and just." Presently before the Court are the following motions:

Defendants' motion to dismiss, or in the alternative, motion for summary judgment (Dkt. #s 27, 28),

Defendants' motion to stay discovery (Dkt. # 35), Plaintiff's (first) motion to amend complaint (Dkt.

# 33), Plaintiff's motion to strike documents (Dkt. # 36), Plaintiff's (first) motion for judgment on pleadings (Dkt. # 37), Plaintiff's motion to compel discovery and strike documents (Dkt. #s 38, 39), Plaintiff's motion to supplement response to Defendants' summary judgment motion (Dkt. # 42), Plaintiff's second motion to supplement response (Dkt. # 44), Plaintiff's motion for hearing, (second) motion to amend complaint, and motion to withdraw previous motion for judgment on the pleadings (Dkt. # 47), Plaintiff's (second) motion for judgment on the pleadings (Dkt. # 48), Plaintiff's motion to strike Defendants' objections (Dkt. # 51), Plaintiff's motion to stay judgment on pleadings (Dkt. # 52), and Plaintiff's motion to supplement evidence (Dkt. # 53).  Defendants submitted a Special Report (Dkt. # 26) as directed by the Court.  For the reasons stated below, the Court finds the motion to dismiss/summary judgment filed by Defendants shall be granted, Plaintiff's motions to supplement his objections to Defendants' motion for summary judgment shall be granted (Dkt. #s 42, 44), Plaintiff's motions to amend complaint shall be denied (Dkt. #s 33, part of 47), and all remaining motions and requests shall be declared moot.

## *BACKGROUND*

On November 24, 2005, MACC correctional officer Mathew Hampton entered Plaintiff's cell to investigate an odor coming from the cell. Defendant Hampton observed that Plaintiff had slurred speech and appeared intoxicated. Hampton asked Plaintiff to step out of the cell. While Defendant Hampton was "pat searching" Plaintiff, a small plastic baggie containing four (4) blue pills fell to the floor. As Hampton knelt down to pick up the baggie of contraband, Plaintiff's right shoulder struck Hampton's left shoulder, knocking the correctional officer back. Defendant Hampton responded by using his arm to push Plaintiff away and handcuffing him. Plaintiff alleges that Defendant Hampton used excessive force at this time by striking him, pushing him against the

2

wall, repeatedly punching him in the head, and kicking him while Plaintiff was on the ground. Plaintiff asserts Defendant Hampton's "excessive force" caused injuries to Plaintiff's shoulder, head and back.        After being handcuffed, Plaintiff was taken to the showers for a strip search, at which time Defendant Hampton and another correctional officer noticed Plaintiff holding something in his hand. Plaintiff refused an order to turn over the object in his hand, placed the object in his mouth and swallowed. Plaintiff later admitted that he had swallowed five Zanax pills. Plaintiff was then escorted to get medical attention where duty nurse Pugh examined him. Nurse Pugh recommended that Plaintiff be transported to the hospital for detox due to the unknown quantity of drugs he had ingested. The nurse also filed a report of her examination which indicated that she did not find any significant injuries caused by the incident. Plaintiff was transported to Colgate Hospital and treated for potential drug overdose. Significantly, Plaintiff did not complain of any injuries while at the hospital.

As a result of the November 24, 2005, incident, Plaintiff was charged with several disciplinary actions including Individual Disruptive Behavior, Possession of Contraband, Disobedience to Orders, and Battery. He was given written notice of the charges and a hearing was held on the merits. Plaintiff was found guilty of the disciplinary charges and appealed the findings. Prior to the final disposition of the appeals process, Plaintiff was transferred to DCCC. The warden at MACC determined that it would not be feasible to spend the time and expense necessary to hold a re-hearing on the misconduct violation of Disobedience to Orders. Accordingly, this misconduct was reversed and expunged. Plaintiff's appeals on the other disciplinary findings were denied.

### *ANALYSIS*

A.      **Motion to dismiss**

      1.      *Standard for dismissal*

Title 42 U.S.C. § 1983 provides individuals a federal remedy for deprivation of their rights secured by the Constitution and laws of the United States.  See Dixon v. City of Lawton, 898 F.2d 1443, 1447 (10th Cir. 1990).  For a complaint under section 1983 to be sufficient a plaintiff must allege two prima facie elements:  that defendant deprived him of a right secured by the Constitution and laws of the United States, and that defendant acted under color of law.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 150 (1970).  Federal Rule of Civil Procedure 8(a) sets up a liberal system of notice pleading in federal courts.  This rule requires only that the complaint include a short and plain statement of the claim sufficient to give the defendant fair notice of the grounds on which it rests. Leatherman v. Tarrant Cty. Narcotics Unit, 507 U.S. 163, 168 (1993) (rejecting heightened pleading requirements in civil rights cases against local governments).  If plaintiff's complaint demonstrates both substantive elements it is sufficient to state a claim under § 1983.  Id.; Meade v. Grubbs, 841 F.2d 1512, 1526 (10th Cir. 1988).

      A court should dismiss a constitutional civil rights claim only if it appears beyond doubt that plaintiff could prove no set of facts in support of his claim which would entitle him to relief.  Meade, 841 F.2d at 1526 (citing Owens v. Rush, 654 F.2d 1370, 1378-79 (10th Cir. 1981)).  For purposes of reviewing a complaint for failure to state a claim, all allegations in the complaint must be presumed true and construed in a light most favorable to plaintiff.  Id.; Hall v. Bellmon, 935 F.2d 1106, 1109 (10th  Cir. 1991).  Furthermore, *pro se* complaints are held to less stringent standards than pleadings drafted by lawyers and the court must construe them liberally.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, conclusory allegations without supporting factual averments are

4

insufficient to state a claim on which relief can be based. Hall, 935 F.2d at 1110. The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing Hall, 935 F.2d at 1110).

> 2. *All monetary damage claims against Defendants, in their official capacities, shall be dismissed*

Plaintiff has sued Defendants Dinwiddie, Beck, Trammell, McGee, Bowen, Hampton, Hurd, Golden, Wilson, Sharp, Blair, Morton, and Doe both individually and in their official capacities. These defendants are all employees of the Oklahoma Department of Corrections ("DOC"), an agency of the State of Oklahoma. To the extent Plaintiff has sued Defendants Dinwiddie, Beck, Trammell, McGee, Bowen, Hampton, Hurd, Golden, Wilson, Sharp, Blair, Morton, and Doe for monetary damages in their official capacities as employees of DOC, the Court finds Plaintiff's complaint fails to state a claim upon which relief may be granted.  It is well-established that the Eleventh Amendment precludes an individual from suing a state in federal court. See, e.g., Will v. Michigan Department of State Police, 491 U.S. 58 (1989); Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Sturdevant .v Paulsen, 218 F.3d 1160, 1164 (10th Cir. 2000) (holding that Eleventh Amendment bars claims for damages against entities that are arms or instrumentalities of a state).  States, other governmental entities acting as "arms of the state," and state officials acting in their official capacities, are not "persons" within the meaning of § 1983 and are entitled to Eleventh Amendment immunity. Will, 491 U.S. at 70-71.  As a result, Plaintiff's damages claims against these Defendants, to the extent they are sued in their official capacities as employees of the Oklahoma Department of Corrections, shall be dismissed with prejudice based on Eleventh Amendment immunity.

3.     *All claims against Defendants Department of Corrections and the State of Oklahoma shall be dismissed*

As noted above, it is well-established that a state is not a 'person' suable under 42 U.S.C. § 1983. Will, 491 U.S. at 71; See also Hafer v. Melo, 502 U.S. 21, 25-26 (1991). The Eleventh Amendment precludes an individual from suing a state in federal court. Id. Accordingly, Plaintiff's claims against the Department of Corrections and the State of Oklahoma shall be dismissed with prejudice.

4.     *Due process claim related to general deficiencies in grievance procedure shall be dismissed (part of Count 5)*

As his fifth claim,[1] Plaintiff complains that Defendants Golden, Wilson, Sharp, Blair, and Morton violated his constitutional right to due process because the DOC grievance procedures are a "notorious sham." See Dkt. # 1. Specifically, he contends that the procedure created by the DOC is a "ping pong process of appeal for the offense report and grievance" which allows Defendants to conspire against Plaintiff in a "bogus process" of a disciplinary hearing (Id.).

Plaintiff's subjective belief that the DOC grievance procedure is a "sham" or a "bogus process" does not support a claim of a constitutional violation. After liberally construing Plaintiff's *pro se* complaint, the Court concludes that Plaintiff cannot establish any facts in support of his claim that the DOC grievance process has deprived him of a constitutional right.  Shango v. Jurich, 681 F.2d 1091 (7th Cir. 1982) (a prison grievance procedure does not require the procedural protections envisioned by the Fourteenth Amendment).  "[A prison] grievance procedure is a procedural right

---

[1] In his response to Defendants' motion to dismiss/motion for summary judgment, Plaintiff expands his argument to include specific complaints about the due process accorded him during the disciplinary and grievance proceedings related to his misconduct violations. Because materials contained in the Special Report must be reviewed to address those complaints, that portion of the count five due process claim will be addressed in the summary judgment section below.

6

only, it does not confer any substantive right upon the inmates.  Hence, it does not give rise to a

protected liberty interest requiring the procedural protections envisioned by the fourteenth

amendment." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (quoting Azeez v. DeRobertis,

568 F.Supp. 8 (N.D. Ill. 1982)); see also Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (an

inmate has no legitimate claim of entitlement to a grievance procedure).

The Court concludes that Plaintiff may not base a § 1983 action on allegations that the

inmate grievance procedure established by the DOC is unsatisfactory. The fact that Plaintiff did not

receive the result he desired from the grievance procedure does not mean that he was denied due

process. He has failed to demonstrate that the grievance procedure does not meet constitutional

standards. Therefore, Plaintiff's fifth claim, insofar as it relates to a general complaint about the

grievance procedures established by the DOC, shall be dismissed for failure to state a claim upon

which relief may be granted.

**B.    Motion for Summary Judgment**

*1.    Summary judgment standard*

Defendants have styled their motion as a motion to dismiss or, in the alternative, a motion

for summary judgment.  Defendants move to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6).

In the alternative, Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56 (c) on all

of plaintiff's claims.  Both Defendants and Plaintiff have submitted matters outside the pleading.

Given that the Court has considered this material in ruling upon Defendants' motion, insofar as it

relates to the Defendants in their individual capacities, the Court treats the remaining arguments in

Defendants' pending motion as a motion for summary judgment and not a motion to dismiss.  See

Fed. R. Civ. P. 12(b) and 56(c); Paper, Allied Indus., Chem. & Energy Workers Int'l Union v.

7

Continental Carbon Co., 428 F.3d 1285, 1292 (10th Cir. 2005).

Entry of summary judgment, pursuant to Fed. R. Civ. P. 56, is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  When reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990) (citing Gray v. Phillips Petroleum Co., 858 F.2d 610, 613 (10th Cir. 1988)).  "However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics, 912 F.2d at 1241 (citing Celotex Corp v. Catrett, 477 U.S. 317, 324 (1986)).  Although the court cannot resolve material factual disputes at summary judgment based on conflicting affidavits, Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991), the mere existence of an alleged factual dispute does not defeat an otherwise properly supported motion for summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  Only material factual disputes preclude summary judgment; immaterial disputes are irrelevant.  Hall, 935 F.2d at 1111.  Similarly, affidavits must be based on personal knowledge and set forth facts that would be admissible in evidence.  Id.  Conclusory or self-serving affidavits are not sufficient.  Id.; see also Salguero v. City of Clovis, 366 F.3d 1168, 1177 n. 4 (10th Cir. 2004); Murray v. City of Sapulpa, 45 F.3d 1417 (10th Cir. 1995). The trial judge shall grant summary judgment if the evidence, viewed in the light most favorable to the non-movant, fails to show that there exists a genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see also Anderson, 477 U.S. at 250.

Where a *pro se* plaintiff is a prisoner, a court authorized "Martinez[2] Report" ("Special Report") prepared by prison officials may be necessary to aid the Court in determining possible legal bases for relief for unartfully drawn complaints.  See Hall, 935 F.2d at 1109.  The Court may treat the Martinez Report as an affidavit in support of a motion for summary judgment, but may not accept the factual findings of the report if the Plaintiff has presented  conflicting evidence.  Id. at 1111.  The Plaintiff's complaint may also be treated as an affidavit if it is sworn under penalty of perjury and states facts based on personal knowledge.  Id.  The Court must also construe Plaintiff's *pro se* pleadings liberally for purposes of summary judgment.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  When reviewing a motion for summary judgment it is not the judge's function to weigh the evidence and determine the truth of the matter but only to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.

In considering Defendants' motion for summary judgment, the Court has examined the Special Report, filed on May 3, 2007. (Dkt. #26).  Plaintiff has filed a response opposing the Defendants' motion, with attached documentation (Dkt. # 29). The documents, however, do not present evidence which refutes the material facts in Defendants' motion and Special Report. Plaintiff does, however, interpret the facts differently to argue that his claims are valid. He has also filed documents purporting to contest the records supplied by Defendants in the Special Report (Dkt. #s 30, 31, 32), including affidavits of various inmates. However, because the Court finds that the documents provided by Plaintiff do not present conflicting material evidence, the Court accepts the factual findings of the Special Report insofar as they are related to the constitutional issues raised by Plaintiff.  See Hall, 935 F.2d at 1111.

---

[2]   Martinez v. Aaron, 570 F.2d 317, 318-19 (10th Cir. 1978).

2.      *Excessive use of force claim (Count 2)*

At the center of Plaintiff's civil rights lawsuit is his contention that Defendant Hampton used excessive force on Plaintiff during the November 24, 2005, incident at MACC. Plaintiff asserts that he was "maliciously punched and kicked in the head, shoulders, and back" resulting in permanent injury.

In a prison setting, the use of excessive force against a prisoner is analyzed under the Eighth Amendment prohibiting cruel and unusual punishment. See Whitley v. Albers, 475 U.S. 312, 319-20 (1986). "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Id. at 319. An excessive force analysis in a prison environment is based on consideration of both the prisoner's legal status and the unique interests of a penal institution. Although "convicted prisoners do not forfeit all constitutional protections by reason of the conviction and confinement in prison," this "does not mean that these rights are not subject to restrictions and limitations." Bell v. Wolfish, 441 U.S. 520, 545 (1979). "Maintaining institutional security and preserving internal order and discipline are essential goals" and "[p]rison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel. . . ." Id. at 546-47. The core judicial inquiry in determining whether a prison official used excessive force is whether force was applied in a good-faith effort to maintain or restore discipline, or whether it was applied maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S.1, 2 (1992) (citing Whitley, 475 U.S. at 320-21). Factors that may be considered by the court include the extent of injury suffered by the inmate, the need for application of force, the relationship between that need and the amount of force

10

used, the threat reasonably perceived by the responsible official, and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7.

In the case at hand, Plaintiff maintains that his treatment by Defendant Hampton during a November 24, 2005, search for illegal contraband was an unlawful or excessive use of force because Hampton maliciously punched and kicked him in the head, shoulders, and back. Defendants seek summary judgment, asserting that Defendant Hampton only used force necessary to regain control over the situation and that Plaintiff's constitutional rights were not violated during the incident. Based upon the record provided the Court by the parties, the Court concludes that, for the reasons discussed below, whatever force was used by Defendant Hampton was applied in a good-faith effort to restore discipline, and was not applied maliciously or sadistically  for the purpose of causing harm. Hudson, 503 U.S. at 2.

During the event in question, Plaintiff was an inmate at MACC. According to Plaintiff, at approximately 7 p.m. Defendant Hampton "poked his head in the cell and called the plaintiff as 'nine eleven'[3] to [step] out of the cell and to place his 'mother fucking hands on the wall.'" See Dkt. #1 at 3. Hampton ordered Plaintiff to remove his shoes, checked them and threw them on the floor. Plaintiff then bent down to put his shoes on. At that point, Plaintiff asserts he was "stricken and pushed to the wall, which caused him to have an injury to [his] shoulder, neck and back." Id. Plaintiff also claims he was "repeatedly punched to the head and was kicked while laying on the ground." Id.  Notably, Plaintiff's version of the incident makes no mention of his intoxicated state, the baggie of drugs which fell from his clothing, or of Defendant Hampton's purpose in searching

---

[3] In his response to Defendants' motion for summary judgment, Plaintiff asserts that the 'nine-eleven' comment was meant as a racial epithet associating the 'Arab' attacks on New York with Plaintiff (Dkt. # 29 at 2).

for illegal contraband. The omitted facts are, however, revealed in the Special Report (Dkt. # 26), and in some of the documents supplied by Plaintiff himself (Dkt. # 29, attachments). The evaluation of Plaintiff's excessive force claim is not dependent, however, upon a resolution of omitted or disputed facts.

Both Plaintiff's submissions and the <u>Martinez</u> Report indicate that Defendant Hampton was conducting a pat-search of Plaintiff because he suspected illegal contraband. During the search, Plaintiff and Defendant collided, knocking the officer back, and Defendant Hampton made a split-second judgment about the necessary amount of force to be used to bring the situation under control. Although Plaintiff's and Defendant Hampton's version of events differ at this point, it is clear that Defendant Hampton used physical force on Plaintiff before placing him in handcuffs. The "reasonableness" of a particular use of force must be judged from the perspective of the officer at the time and not every push or shove, even it may later seem unnecessary, violates the Constitution. <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989). Officer Hampton clearly perceived a need for force to maintain discipline and control after being bumped by Plaintiff, who exhibited signs of intoxication. There is no evidence in the record to indicate the force was maliciously or sadistically applied. Further, contrary to Plaintiff's claim of "severe" injuries, the medical examination by Nurse Pugh revealed "superficial abrasions, bruising and various contusions" to Plaintiff's head, neck and shoulders (Dkt. # 26, Part I, attachment 4).  As to Plaintiff's claim of shoulder injury, his medical records revealed that he had a pre-existing condition with his shoulder caused by a motor vehicle accident in 2002 that required two rods to be placed in his left shoulder. Although the altercation with Defendant Hampton may have exacerbated Plaintiff's shoulder injury, the medical records do not support his claim of a severe shoulder injury resulting from the November 24th incident.

Considering the minor extent of injury suffered by Plaintiff, the need for application of force, the relationship between that need and the amount of force used, and the threat reasonably perceived by Defendant Hampton, the Court finds that Plaintiff's Eight Amendment constitutional right to be free from cruel and unusual punishment was not violated by the actions of Defendant Hampton on November 24, 2005. Hudson, 503 U.S. at 7.

       3.     *Lack of training claim (Count 1)*

In count one, Plaintiff argues that Defendants Beck, Trammell, and Dinwiddie failed to ensure that their staff and disciplinary officers were properly trained. He claims that the injuries he suffered by Defendant Hampton "clearly proves the lack of training by facility head." See Dkt. #1 at 4. To make a prima facie claim for failure to train or supervise in an excessive force case, a plaintiff must demonstrate the officer(s) in question "exceeded constitutional limitations on the use of force."Estate of Larsen ex rel. Sturdivan v. Murr, --F.3d--, 2008WL40020 (10th Cir. 2008) (quoting Carr v. Castle, 337 F.3d 1221, 1228 (10th Cir. 2003)). Since no constitutional harm was inflicted by Defendant Hampton, Plaintiff is not entitled to relief on this claim. Id.; see also City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

       4.     *Denial of medical care claim (Count 3)*

To state a § 1983 claim for a violation of a convicted prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Deliberate indifference" is defined as knowing and disregarding an excessive risk to an inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 827 (1994); see also Helling v. McKinney, 509 U.S. 25, 35-37 (1993). In Wilson v. Seiter, 501 U.S. 294 (1991), the Supreme Court clarified that the deliberate indifference

13

standard under Estelle has two components:   (1) an objective requirement that the pain or deprivation be sufficiently serious; and (2) a subjective requirement that the offending officials act with a sufficiently culpable state of mind.  Id. at 298-99; Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000).   Negligence does not state a claim under § 1983 for deliberate indifference to medical needs.  Hicks v. Frey, 992 F.2d 1450, 1455 (6th Cir. 1993).  In addition, differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim.  Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Plaintiff claims that after "being severely beaten by the defendant Hampton, [he] was taken to the segregation unit instead of medical." See Dkt. # 1 at 4. He further asserts that he was "not taken to the medical unit until a week after the incident." Id.  Accordingly, he argues in Count III that he was "denied immediate medical care." Id. As noted by Defendants in the motion to dismiss/summary judgment, the record demonstrates that Plaintiff's factual allegations are incorrect. By Plaintiff's own account, the incident with Defendant Hampton occurred at approximately 7:00 p.m. In the records provided by Plaintiff, Nurse Pugh's report indicates that she was called to examine Plaintiff at approximately 8:50 p.m. the same day (Dkt. # 32, attachment 1). Because Plaintiff had swallowed an unknown quantity of pills, believed to be Zanax, Plaintiff was taken that same evening to the hospital for detoxification. The hospital records do not show any complaints by Plaintiff of pain or suffering as a result of the alleged "severe beating."  Plaintiff now claims that he should have been transported to a hospital eight (8) days later because of his "considerable pain and discomfort," and that "no radiology was done which may have diagnosed any further damage to [his] should or head or wrist." See Dkt. # 29 at 10.

The Tenth Circuit Court of Appeals has addressed the issue of a delay in the providing of medical care, as follows:

> To satisfy the objective component of a deliberate indifference claim arising under the Eighth Amendment, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." Self v. Crum, 439 F.3d 1227, 1230 (10th Cir. 2006). "[T]he purpose for this requirement is to limit claims to significant, as opposed to trivial, suffering." Mata v. Saiz, 427 F.3d 745, 753 (10th Cir.2005). Consequently, we look to the alleged injury claimed by the prisoner, and ask "whether that harm is sufficiently serious." Id.
>
> When the prisoner's Eighth Amendment claim is premised on an alleged delay in medical care, the prisoner must "show that the delay resulted in substantial harm." Oxendine v. Kaplan, 241 F.3d, 1272, 1276 (10th Cir. 2001) (internal quotation marks omitted). That "substantial harm" can be the ultimate physical injury caused by the prisoner's illness, so long as the prisoner can show that the more timely receipt of medical treatment would have minimized or prevented the harm. See Mata, 427 F.3d at 753. The "substantial harm" can also be an intermediate injury, such as the pain experienced while waiting for treatment and analgesics. Id. Although "not every twinge of pain suffered as a result of delay in medical care is actionable," when the pain experienced during the delay is substantial, the prisoner "sufficiently establishes the objective element of the deliberate indifference test." Sealock, 218 F.3d at 1210.

Kikumura v. Osagie, 461 F.3d 1269, 1292 (10th Cir. 2006). First, it is clear that there was no delay in providing medical treatment to Plaintiff on the evening of November 24, 2005. He was examined by the facility nurse shortly after the incident and taken to the hospital for additional treatment. As for Plaintiff's claim that he should have been taken to the hospital again eight days later for further diagnosis and treatment, the Court finds that Plaintiff has not satisfied either component of the test for deliberate indifference. He has not demonstrated that any delay in medical treatment was sufficiently serious to constitute a deprivation of constitutional rights, nor has he shown that the Defendants knew of and disregarded any excessive risk to Plaintiff. Based upon the record provided by the parties, the Court finds that Defendants are entitled to summary judgment on Plaintiff's claim of denial of medical care.

5.      *Retaliation claim (Count 4)*

Plaintiff next argues that his transfer to DCCC was ordered in retaliation for his civil rights lawsuit. He asserts that Defendants Beck, Dinwiddie, Trammell, McGee, Doe and Hood [sic] "all conspired to harm plaintiff's life by transferring him from Mack Alford to Dick Conner Correction Center and housing him in unit G & J, the 'notorious unit of G & J,' where the most dangerous and violent inmates are being housed." See Dkt. # 1 at 5.  Defendants assert that Plaintiff fails to support his allegations with facts, that the transfer was "prompted by Plaintiff's 11 documented disciplinary problems" at MACC, and that DCCC "offers more structured security for problematic inmates like Plaintiff." See Dkt. # 27 at 15-16. In response, Plaintiff claims that his case is extraordinary because the Defendants conspired to deprive him "of personal body integrity through policy systems by housing him in a situation where [he] would statistically face a greater risk of death at the hands of other prisoners." See Dkt. # 29 at 15.

It is settled law that prison officials may not retaliate against an inmate because of the inmate's exercise of his right of access to the courts.  Green v. Johnson, 977 F.2d 1383, 1389 (10th Cir. 1992); Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990).  However, inmates may be transferred from one prison to another for any constitutionally permissible reason, or for no reason at all.  See Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983).  Retaliation requires evidence of improper motive to survive a summary judgment motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 244, 256-257 (1986); Smith v. Maschner, 899 F.2d at 948 n. 4. Additionally, Plaintiff must "prove that 'but for' the retaliatory motive" he would not have been transferred. Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998). He must allege specific facts showing retaliation because he filed a lawsuit. Frazier v. Dubois, 922 F.2d 560, 562 (10th Cir. 1990).

In this case, Plaintiff's allegation that his transfer to DCCC was the result of retaliation by Defendants is unsupported by specific facts.   Defendants have provided evidence that Plaintiff was transferred to another medium security facility after being "involved in a spontaneous use of force against an officer at MACC." See Dkt. # 26, Ex. 5, attachment 8. The transfer documents also reflect that Plaintiff had numerous different misconduct violations while at MACC from June 23, 2005, through November 24, 2005 (Id.).

In response to Defendants' motion for summary judgment, Plaintiff does not controvert the evidence provided by Defendants explaining the reasons for the transfer.  Instead, he reasserts his conclusory assertions that his transfer was retaliatory and a result of a conspiracy among defendants. He provides no evidence, other than his self-serving statements, supporting his argument that his transfer from MACC resulted from the improper retaliatory motives of Defendants. The uncontroverted evidence provided by Defendants demonstrates that Plaintiff's transfer was not caused by improper motives.  The evidence demonstrates that it was penologically appropriate to transfer Plaintiff to a different facility. His claim of retaliatory transfer is speculative and illusory. The Court finds, that based on the summary judgment record, Plaintiff has failed to demonstrate that his transfer resulted from any unconstitutional retaliatory motive by Defendants. The Court concludes, therefore, that the evidence, viewed in the light most favorable to Plaintiff, fails to show that there exists a genuine issue of material fact, and Defendants are entitled to judgment as a matter of law.

The Court further finds that Plaintiff's allegations of a conspiracy are conclusory as he has presented no evidence of an agreement or meeting of the minds among the defendants to support his conspiracy claim. "Conclusory allegations of conspiracy are insufficient to state a valid § 1983

claim." Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989). Defendants are entitled to judgment on this issue.

6.      *Due process violations during disciplinary and grievance proceedings (part of Count 5)*

As part of his due process claim in Count 5, Plaintiff alleges certain defendants violated his due-process rights as follows: (1) he was denied physical evidence including videotapes of the incident and pictures of the contraband; (2) some of the witnesses Plaintiff requested were not allowed; and (3) the hearing officers and prison officials were biased (Dkt. # 29 at 12).  Plaintiff is seeking to recover money damages as relief for the alleged due process violations during his disciplinary proceedings and the subsequent grievance proceedings. However, Plaintiff's claims are foreclosed by Edwards v. Balisok, 520 U.S. 641 (1997). In Edwards, the Supreme Court explained that "a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." Id. at 643 (quoting Heck v. Humphrey, 512 U.S. 477, 487 (1994)). The Tenth Circuit has acknowledged that this rule also applies to challenges to punishments imposed as a result of prison disciplinary infractions. Cardoso v. Calbone, 490 F.3d 1194, 1199 (10th Cir. 2007); Edwards, 520 U.S. at 648. Because judgment in favor of Plaintiff on his due process claim would necessarily imply the invalidity of his disciplinary convictions and he has not shown that the convictions have previously been invalidated, Plaintiff's request for damages on this issue shall be denied. Defendants are entitled to judgment as a matter of law.

**C.      Plaintiff is not entitled to a declaratory judgment**

In addition to his request for monetary damages, Plaintiff seeks a declaratory judgment that

the Defendants have violated his rights under the Fourth, Fifth, Eight and Fourteenth Amendments to the United States Constitution. The Court has reviewed all of Plaintiff's claims and found no constitutional violations by the Defendants. Accordingly, Plaintiff is not entitled to a declaratory judgment.

**D.      Plaintiff's Motions to Amend (Dkt. #s 33, part of 47)**

Plaintiff filed his original complaint on January 24, 2007 (Dkt. # 1). After service of process, the Defendants submitted a Special Report (Dkt. # 26), and filed a motion to dismiss or, in the alternative, motion for summary judgment (Dkt. #s 27, 28). On May 23, 2007, Plaintiff filed his first motion to amend (Dkt. # 33) and submitted a proposed amended complaint, which this Court has reviewed. By amending his complaint, Plaintiff seeks to substitute a named defendant for the John Doe defendant, and to bolster the factual allegations made in the original complaint. He also seeks additional remedies from this Court including "reinstating of lost credits" and "correction of records on CRC." Defendants filed a response in opposition to Plaintiff's motion (Dkt. # 34). Plaintiff filed a reply to Defendants' response (Dkt. # 36). It is clear that Plaintiff seeks to amend his complaint to conform to the subsequent pleadings and evidentiary materials, particularly the <u>Martinez</u> Report, and to provide more specific facts regarding dates, incidents and persons involved.

On November 1, 2007, Plaintiff filed his second motion to amend complaint (Dkt. # 47). Plaintiff submitted his proposed amended complaint, which this Court has reviewed. In this second request to amend, Plaintiff wants to add three new defendants who are employees at DCCC. He claims he has been subject to retaliation because he filed the instant lawsuit, and alleges an "active conspiracy" exists among the staff members at DCCC to deny him a transfer to a minimum security facility (Dkt. # 47). In addition to the relief previously requested in the original complaint and the

19

proposed first amended complaint, Plaintiff asks the Court to grant him an immediate transfer to a minimum security facility.

Defendants object to the second motion to amend on the grounds that none of the three new defendants were involved in the acts that gave rise to Plaintiff's original complaint and the claims against them do not relate back to the events contained in the original complaint (Dkt. # 49). Defendants also assert that, because the motion to amend was filed several months after Defendants filed their motion to dismiss/motion for summary judgment, allowing Plaintiff to amend would prejudice Defendants and cause undue delay in resolution of the claims in the original complaint. Finally, Defendants assert that Plaintiff's addition of new parties and claims would be futile as the amendments could not withstand a Rule 12(b)(6) motion to dismiss. Plaintiff replies to Defendants' objections by asserting that his claims arose from the same facts alleged in the original pleading and shows "proper factual allegations to support the claims made in the original complaint." See Dkt. # 51.   The proposed new claims, however, are against new parties and are totally separate and distinct from those raised in the original complaint.

Pursuant to Fed. R. Civ. P. 15(a), leave to amend a pleading "shall be given when justice so requires." However, in light of the procedural posture of this case, the Court finds Plaintiff's two motions to file an amended complaint should be denied. Defendants have filed dispositive motions based on the claims asserted by Plaintiff in the original complaint. Resolution of Defendants' pending motions would be further delayed if Plaintiff were allowed to file either of the proposed amended complaints.

**E.      Remainder of pending motions are declared moot**

Because Defendants' motion to dismiss/motion for summary judgment is being granted, it

is unnecessary to rule on the remaining motions filed by both Plaintiff and Defendants. Defendants' motion to stay discovery (Dkt. # 35), Plaintiff's motion to strike documents (Dkt. # 36), Plaintiff's (first) motion for judgment on pleadings (Dkt. # 37), Plaintiff's motion to compel discovery and strike documents (Dkt. #s 38, 39), Plaintiff's motion for hearing and motion to withdraw previous motion for judgment on the pleadings (part of Dkt. # 47), Plaintiff's (second) motion for judgment on the pleadings (Dkt. # 48), Plaintiff's motion to strike Defendants' objections (Dkt. # 51), Plaintiff's motion to stay judgment on pleadings (Dkt. # 52), and Plaintiff's motion to supplement evidence (Dkt. # 53) shall be declared moot.

## *CONCLUSION*

After careful review of the record in this case, the Court concludes that Plaintiff is not entitled to relief on his 42 U.S.C. § 1983 civil rights claims against Defendants.


**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1.  Defendants' motion to dismiss, or in the alternative, motion for summary judgment (Dkt. #s 27, 28) is **granted** as follows:

    a.  Plaintiff's claims for damages against Defendants Dinwiddie, Beck, Trammell, McGee, Bowen, Hampton, Hurd, Golden, Wilson, Sharp, Blair, Morton, and Doe, in their official capacity, are **dismissed with prejudice** based on Eleventh Amendment immunity.

    b.  All claims against Defendants Department of Corrections and the State of Oklahoma are **dismissed with prejudice** based on Eleventh Amendment immunity.

    c.  Plaintiff's due process claim related to general deficiencies in the grievance

21

procedure (part of Count 5) is **dismissed** for failure to state a claim.

d.      Defendants Dinwiddie, Beck, Trammell, McGee, Bowen, Hampton, Hurd, Golden, Wilson, Sharp, Blair, Morton, and Doe, in their individual capacity, are **granted summary judgment**.

e.      Plaintiff's request for declaratory relief is **denied**.

2.      Plaintiff's motions to supplement his objections to Defendants' motion for summary judgment (Dkt. #s 42 and 44) are **granted**.

3.      Plaintiff's motions to amend (Dkt. #s 33 and part of 47) are **denied**.

4.      All remaining motions and requests are **declared moot**.

5.      A separate judgment shall be entered in favor of Defendants.


DATED THIS 30th day of January, 2008.


_____

TERENCE KERN
UNITED STATES DISTRICT JUDGE