IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MURTAZA ALI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 07-CV-059-TCK-TLW |
| | ) |
| WALTER DINWIDDIE, Warden, DCCC; | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This is a 42 U.S.C. § 1983 civil rights action filed by Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*. By Order and Judgment filed August 26, 2011 (Dkt. # 164), the Tenth Circuit Court of Appeals reversed this Court's grant of summary judgment in favor of Defendant Hampton on Plaintiff's claim of excessive use of force and remanded the case for further proceedings as to that claim. See Dkt. # 164 (Ali v. Dinwiddie, 437 Fed. Appx. 695 (10th Cir. 2011)). The appellate court affirmed "[i]n all other respects." See Dkt. # 164. The Tenth Circuit's mandate (Dkt. # 166) issued September 19, 2011.

On July 5, 2013, Defendant Hampton filed a motion for summary judgment and brief in support (Dkt. # 268). Plaintiff filed a response (Dkt. # 273). For the reasons stated below, the Court concludes that Defendant's motion shall be denied.

*BACKGROUND*

The issue remaining for resolution in this matter is Plaintiff's claim that, on November 24, 2005, he was subjected to an excessive use of force by Defendant Matthew Hampton, a detention officer at Mack Alford Correctional Center. In its Order and Judgment, the Tenth Circuit provided the following summary of the factual background of the incident:

The parties agree on some of the background details. At approximately 7 p.m. on November 24, 2005, Hampton ordered Ali out of his cell. Hampton then conducted a pat-down search for contraband. At some point during the search, Hampton used force against Ali.

From there, the parties' versions of the incident differ significantly. In his verified amended complaint, Ali asserts Hampton stopped at Ali's cell, yelled "nine-eleven," and ordered him to "[g]et out of [the] cell and place his mother f[.....g] hands on the wall." Ali complied and Officer Hampton then conducted a pat-down search of Ali. From there on, the gravamen of Ali's claim is that he was punched and kicked after he was handcuffed and not resisting. His sworn statements vary, tone and tint, but generally present a consistent theme. When another officer arrived, the two officers escorted Ali to the security office. He was then taken for a medical evaluation by the on-duty nurse, who noted he suffered numerous contusions to his head, bruising and pain to his left shoulder, and abrasions to his right wrist. In the ensuing weeks, Ali was examined several times by medical staff who reported his complaints about chronic pain; x-rays were taken. Roughly a year and a half after the incident, a report from the Chief Medical Officer at the Oklahoma Department of Corrections Medical Services stated Ali had "limited abduction of his left shoulder." Ali asserts the medical evidence subsequent to the November 24, 2005 incident with Hampton, when compared to his previous medical records, demonstrates his injuries were the result of Hampton's excessive use of force. Specifically, the Oklahoma Department of Corrections "Work/Activity/Housing Summary" form completed roughly two months before the incident indicates Ali had "no medical limitations."

Defendants present a very different version of events. They claim Officer Hampton noticed an odor when he walked by Ali's cell and asked him (and his cellmate) about it. At this point, Hampton noticed Ali's speech was slurred, and ordered him out of his cell in order to conduct a pat down search. Hampton ordered Ali to turn around and began searching Ali's person. As Hampton was searching, a plastic baggy with blue pills fell from the waistband of Ali's pants. When Hampton bent over to pick up the bag, Ali made a movement towards the floor which resulted in the two knocking shoulders causing Hampton to fall backwards. In response to this contact, Hampton brought up his left arm in a "large circular motion"; his response knocked Ali off balance causing Ali to fall backwards. (Supp. R. Vol. I at 40.) Hampton picked up the contraband and placed it in his pocket. After another corrections officer arrived Ali was handcuffed, escorted to the security office and then to the showers for a strip search. While strip searching Ali, Hampton noticed something in Ali's hand and ordered Ali to produce it. Instead Ali swallowed it. After the strip search, Ali was taken for medical attention and examined by a nurse who observed no significant injuries warranting immediate medical attention. She recommended Ali be taken to the hospital for drug detoxification. He was transported to the hospital and returned to the correctional facility at approximately 10 p.m.

See Dkt. # 164 (footnotes and citations to the record omitted).

Defendant Hampton now reasserts his request for summary judgment based, in large part, on an audio/video recording, see Dkt. # 244, made by Department of Corrections officials shortly after the incident. The video was only recently discovered and made a part of the record in this matter on May 14, 2013. Id. It was not before the Tenth Circuit at the time of its ruling. According to Defendant, "[t]he video recording is clearly contrary to the plaintiff's version of the events." See Dkt. # 268. In response to the motion for summary judgment, Plaintiff argues that, despite the video evidence, his evidence presents genuine issues of material fact as to each factor set forth by the Supreme Court in Hudson v. McMillian, 503 U.S. 1, 7, (1992). See Dkt. # 273.

*ANALYSIS*

**A. Summary judgment standard**

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). "However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Id. The Court cannot resolve material factual disputes at summary judgment based on conflicting affidavits. Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991). However, the mere existence of an alleged factual dispute does not defeat an otherwise properly supported motion for summary judgment. Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Only material factual disputes preclude summary judgment; immaterial disputes are irrelevant. Hall, 935 F.2d at 1111. Similarly, affidavits must be based on personal knowledge and set forth facts that would be admissible in evidence. Id. Conclusory or self-serving affidavits are not sufficient. Id. If the evidence, viewed in the light most favorable to the nonmovant, fails to show that there exists a genuine issue of material fact, the moving party is entitled to judgment as a matter of law. See Anderson, 477 U.S. at 250. When reviewing a motion for summary judgment it is not the judge's function to weigh the evidence and determine the truth of the matter but only to determine whether there is a genuine issue for trial. Id. at 249.

**B. Excessive use of force**

Based upon the record in this case, the Court concludes that, for the reasons discussed below, Defendant Hampton is not entitled to summary judgment and that whether excessive force was used in this instance is a question to be resolved by a jury. Therefore, Defendants' motion for summary judgment on Plaintiff's excessive use of force claim shall be denied.

In its Order and Judgment filed in this case, the Tenth Circuit set out the law governing analysis of an excessive use of force claims, as follows:

> "[T]he unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quotations omitted). To determine whether a prison official's use of force was "unnecessary and wanton," we ask "whether [the] force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7, 112 S.Ct. 995. We consider "the need for [the use of] force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. at 7, 112 S.Ct. 995 (quotations omitted). Although the extent of the inmate's injury is also relevant, an inmate need not show a "significant injury" or a certain level or type of injury to state a claim. Id. at 7, 9, 112 S.Ct. 995; see also United States v. LaVallee,

4

> 439 F.3d 670, 688 (10th Cir. 2006). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley v. Albers, 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).
>
> Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9, 112 S.Ct. 995. Rather,
>
>> [t]o be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.
>
> Whitley, 475 U.S. at 319, 106 S.Ct. 1078. Accordingly, de minimis uses of physical force are excluded from the cruel and unusual punishment inquiry unless "repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10, 112 S.Ct. 995 (quotations omitted); see also Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992).

See Dkt. # 164 (footnote omitted). The Circuit Court noted that:

> An excessive force claim has an objective and subjective element—a plaintiff must establish (1) "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation," and (2) the defendant acted with "a sufficiently culpable state of mind", i.e., the force was applied "maliciously and sadistically," rather than "in a good faith effort to maintain or restore discipline." Smith v. Cochran, 339 F.3d 1205, 1212 (10th Cir. 2003) (quotations omitted).

Id. (n.10).

In the instant case, Defendant Hampton states that he "engaged in a spontaneous use of force, regaining control of the situation" that had developed in a cell occupied by Plaintiff and others. See Dkt. # 268 at ¶ 8 (citing Dkt. # 26, Part 1, Att. 3 at 2-3). According to Defendant Hampton, the "situation" involved "a baggie containing 4 small blue pills" which had fallen from Plaintiff's waist line to the cell floor as Plaintiff was being pat searched by Defendant Hampton. Id. at ¶ 6 (citing Dkt. # 26, Part 1, Att. 3 at 2). In contrast, Plaintiff stated in his deposition that "[n]o pills fell off

5

me," and that, as he was putting on his shoes, he was pushed into the cell wall, hit the floor, lifted by his shoulders, arms and wrists, handcuffed and then beaten and kicked a couple more times, all by Defendant Hampton. See Dkt. # 273, Ex. 1 at 85, lines 21-15, and 86, lines 1-15; 90, line 8. In moving for summary judgment, Defendant also cites to the apparent lack of serious injuries sustained by Plaintiff as evidenced in the video tape recently filed of record and argues that "Ali's testimony is blatantly contradicted by the video. In light of the video recording no reasonable jury could believe and this Court should not adopt Ali's version of events." See Dkt. # 268. Plaintiff disagrees with Defendant's assessment of the video tape. See Dkt. # 273.

After consideration of the factors outlined in Hudson and of the evidence viewed in the light most favorable to Plaintiff, the Court finds that, contrary to Defendant's assertion, genuine issues of material fact remain to be resolved in this matter. The video recording offered by Defendant does not provide additional insight into what happened in the cell at the time Defendant Hampton allegedly used excessive force to subdue Plaintiff. Plaintiff alleges that he was not resisting Defendant Hampton and that after he was handcuffed, Defendant Hampton kept punching and hitting him. Defendant asserts that he is entitled to summary judgment because the video refutes Plaintiff's allegations that he did not possess pills at the time of the altercation and that he sustained serious injury to his shoulder as a result of the actions taken by Defendant Hampton. However, after viewing the video in the light most favorable to Plaintiff, the Court finds that genuine issues of material fact concerning the use of force by Defendant Hampton remain to be resolved. Defendant's motion for summary judgment shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that** Defendant's motion for summary judgment (Dkt. # 268) is **denied**.

DATED THIS 24th day of September, 2013.

TERENCE C. KERN
UNITED STATES DISTRICT JUDGE